IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RACHEL WILSON o/b/o A.R.L.S.                                          PLAINTIFF

V.                                NO. 15-5021

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Rachel Wilson, brings this action on behalf of her minor son, A.R.L.S., seeking judicial review, pursuant to 42 U.S.C. §405(g), of a decision of the Commissioner of the Social Security Administration (Commissioner) denying A.R.L.S.'s application for child's supplemental security income (SSI) benefits under Title XVI of the Social Security Act. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff protectively filed the application for SSI on A.R.L.S.'s behalf on April 27, 2012, alleging that A.R.L.S. was disabled beginning on April 27, 2012, due to back problems, GERD disease and asthma. (Tr. 111-116, 126, 129). An administrative hearing was held on June 6, 2013, at which Plaintiff was represented by counsel and testified. (Tr. 32-46).

The ALJ, in a written decision dated August 16, 2013, found that A.R.L.S. was not disabled, as A.R.L.S. did not have an impairment that met or was medically or functionally equal to a listed impairment. (Tr. 18-19).

Plaintiff requested a review of the hearing decision by the Appeals Council, which denied that request on November 21, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). The case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.   Applicable Law:

In this case, the ALJ employed a three-step sequential test to determine the validity of the alleged disability: 1) First, a determination of whether the child is engaged in substantial gainful activity; 2) Second, a determination of whether the child's impairments are "severe;" and 3) Third, whether the child's impairments are medically or functionally equal in severity to the listed impairments set forth in the Commissioner's disability regulations. (Tr. 16-18).

With respect to the third step, "a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment." Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 854 (8th Cir. 2003)(quoting 20 C.F.R. §416.926(a). "A child's impairment is functionally equal to a listed impairment if there is an 'extreme' limitation in one of six specific functional domains, or a 'marked' limitation in at least two domains." Pepper, 342 F.3d at 854 (quoting 20 C.F.R. §416.926(a).

"A marked limitation in a domain is a limitation that seriously interferes with a child's ability to 'independently initiate, sustain, or complete activities.'" England v. Astrue, 490 F.3d 1017, 1020 (8th Cir. 2007)(quoting 20 C.F.R. 416.926a(g)(2)(i)). "A marked limitation is 'more than moderate' but 'less than extreme.'" Id. "An extreme limitation is one that 'interferes very seriously with [a child's] ability to independently initiate, sustain, or

2

complete activities.'" Scales v. Barnhart, 363 F.3d 699, 703-704 (8th Cir. 2004)(quoting 20 C.F.R. §416.926a(g)(3)(i). "Domain analysis considers the child's age-appropriate functioning in relation to: acquiring and using information, attending and completing tasks, interacting and relating with others, moving around and manipulating objects, caring for oneself, and health and physical well being." Pepper, 342 F.3d at 854 (quoting 20 C.F.R. §416.926a(a)(1)(i)-(vi)) "The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs." Scott v. Astrue, No. 09-0196-CV-W-GAF-SSA, 2010 WL 750062 at *2 (W.D. Mo. Mar. 2, 2010).

### III. Discussion:

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in failing to find that Plaintiff's impairments were functionally equivalent to a Listing; and 2) Whether the ALJ erred in according "significant weight" to the opinion of Plaintiff's teacher. (Doc. 10). Before discussing Plaintiff's arguments, the Court will briefly summarize the facts.

A.R.L.S. was born in November of 2011. (Tr. 126). At birth, his second and third toes were connected and there was a cyst located on his left lower back. (Tr. 205, 207). An early ultrasound in the area of the soft tissue swelling in the lower back was normal on December 1, 2011. (Tr. 587). A.R.L.S. was diagnosed with gastroesophageal reflux (GERD) on December 16, 2011. (Tr. 199). A.R.L.S. also suffered from several upper respiratory and ear infections. (Tr.172, 176, 178, 181, 185, 187, 190). On April 3, 2012, Dr. Charles S. Ball, of Northwest Arkansas Pediatric Clinic, reported a large 6 cm x 4 cm mass over A.R.L.S.'s lumbar spine, which appeared to be a lipoma. (Tr. 170). On April 10, 2012, A.R.L.S. was diagnosed with lipoma of his back, acute, and a repeat ultrasound for spinal dysraphism was

3

ordered, and if the ultrasound was unable to adequately evaluate the spinal cord, a MRI was to be performed. (Tr. 590). On April 24, 2012, a MRI of A.R.L.S.'s lumbar spine revealed the following:

    1. Probable lipoma in the subcutaneous region of the lower back
    2. Probable fibrous tract extending from the lipoma into the spinal canal
    3. Possible tethered cord
    4. Motion limited examination

(Tr. 709). On May 22, 2012, A.R.L.S. was seen by Dr. Gregory W. Albert, at the Neurosurgery Clinic at Arkansas Children's Hospital, for questionable spinal lipoma. (Tr. 210). Dr. Albert noted that A.R.L.S. had been doing well since birth, moved all extremities well with apparent good strength, and had a fat pad just to the right of his lumbar spine. (Tr. 211). Dr. Albert reported that he could not make a diagnosis of spinal lipoma based on the imaging studies he then had available, and a spine MRI under anesthesia was subsequently performed. On July 31, 2012, Dr. Albert again evaluated A.R.L.S., with the new MRI, and noted that A.R.L.S. appeared to have good gross motor strength on both lower extremities, but on his left foot, his second and third digits overlapped each other. (Tr. 231). He found no gross orthopedic deformity in the neutral position and reported that he appeared to have good sensation to light touch in both lower extremities. (Tr. 231). Dr. Albert noted that A.R.L.S. had no evidence of hyperreflexia, had downgoing toes bilaterally, no clonus, and did have a fatty infiltration over his lumbar spine with a small epidemoid appendage, but no evidence of a sinus tract. (Tr. 231). Dr. Albert reviewed the MRI and reported that A.R.L.S. had a dorsal lipoma with a tethered spinal cord, and there were some bony anomalies, and a fatty infiltration of his filum. (Tr. 231). At that point, Dr. Albert thought it was reasonable to conduct a detethering procedure, to which Plaintiff agreed. (Tr. 231, 238).

4

Dr. Albert performed surgery on A.R.L.S., resectioning the spinal lipoma and untethering the spinal cord with resection of filum terminale, and A.R.L.S. was discharged from the hospital on September 3, 2012. (Tr. 250, 264).

Prior to the surgery, on May 24, 2012, Christie Krumwiede, A.R.LS.'s teacher at Ivory M. Conley School, where he attended, who had known A.R.L.S. for three months, and worked with him five days a week from 8:00 am until 2:00 pm, completed a Teacher Questionnaire. (Tr. 135-141). In said questionnaire, Ms. Krumwiede reported that A.R.L.S. had no problems acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for himself. (Tr. 135-140). She also reported that he took no medication on a regular basis and did not miss school frequently due to illness. (Tr. 141).

On October 3, 2012, Jerrye Woods, M.D., completed a Childhood Disability Evaluation. (Tr. 305-306). Dr. Woods found that A.R.L.S. had no limitations in acquiring and using information, in attending and completing tasks, in interacting and relating with others, in caring for himself, or in health and physical well-being. (Tr. 307-308). Dr. Woods further found that A.R.L.S. had less than marked limitation in moving about and manipulating objects. (Tr. 308).

On October 9, 2012, Dr. Albert saw A.R.L.S. in follow-up, and reported that he was recovering well from his complex tethered spinal cord release and seemed to be improving somewhat neurologically. (Tr. 413). On November 16, 2012, at a wellness visit to Dr. Orrin J. Davis, at Northwest Arkansas Pediatric Clinic, it was reported that A.R.L.S. passed the developmental milestones of 12 months. (Tr. 397).

Dr. Albert saw A.R.L.S. again in follow-up on February 5, 2013, and found him to be recovering very well from his complex tethered spinal cord release, and that his neurological status continued to improve. (Tr. 417).

On February 8, 2013, Plaintiff reported to Dr. Laureen Benafield, of Northwest Arkansas Pediatric Clinic, that Dr. Albert wanted him to "see Ortho" for gait abnormalities, and that he turned in when he walked, right side greater than left. (Tr. 379). He was assessed with femoral anteversion, chronic, and gait abnormality, chronic. (Tr. 380).

On February 25, 2013, Karen Campbell, Certified Teacher at Elizabeth Richardson Child Development Center, conducted a Developmental Evaluation of A.R.L.S. (Tr. 321). At the conclusion of the evaluation, she made the following recommendations:

1. Due to test scores and informed clinical observations, it is my recommendation that [A.L.R.S.] attend a structured preschool program to meet developmental needs through individual, small and large group instruction in the areas of social emotional, self-help, fine motor, language, and cognitive.

2. Due to test scores and informed clinical observations, it is my recommendation that [A R.L.S.] be evaluated for speech therapy with services to follow as deemed appropriate through testing.

(Tr. 325). A.R.L.S. was thereafter seen at Children's Therapy T.E.A.M. on March 5, 2013, for Physical Therapy Evaluation. (Tr. 315). Therapist, Charity Williams, MS, PT, reported that A.R.L.S. was referred to them for a physical therapy evaluation secondary to concerns with his feet turning in when he walked. (Tr. 35). She reported that A.R.L.S. demonstrated good strength in his lower extremities with his ability to maintain squatting to play with a toy and return to standing. He demonstrated mild abdominal and trunk weakness with difficulty sidesitting without upper extremity support. His preferred sitting posture was "W" sitting with both lower extremities widely abducted for stability. Pelvic weakness was noted with

6

his inability to tall kneel without assistance and a tendency to "sink" into excessive hip abduction. His tone appeared within normal limits. (Tr. 315-316). Ms. Williams found A.R.L.S.'s upper extremity active and passive ranges of motion to be within normal limits, but he demonstrated hypermobility in his plantarflexors and hips and a slight decrease in range of motion in his dorsiflexors. His neck and trunk range of motion were also within functional limits. (Tr. 316). Secondary to his muscle weakness in his trunk, Ms. Williams reported that if he was placed in right sitting, tailor sitting, or sidesitting, he was less stable and would attempt to support himself with his upper extremities. (Tr. 316). A.R.L.S. could independently transition from sitting to standing, and was able to kneel independently without upper extremity support, but was unable to push up into tall kneel without upper extremity support. (Tr. 316). A.R.L.S. was able to overhand throw a tennis ball three feet forward without a loss of balance and lift his foot to attempt to kick a playground ball forward, but had difficulty making contact. (Tr. 316). In her assessment, Ms. Williams reported as follows:

> Although [A.C.LS.]'s gross motor skills reflect close to age appropriate level on the PDMS-2, there are concerns with the aforementioned asymmetries, poor quality of movement, and gait abnormalities. Secondary to [A.R.L.S.] undergoing a significant spinal surgery only 6 months ago, I recommend [A.R.L.S.] be monitored closely to assure the continued progress of his gross motor skills. He would benefit from skilled physical therapy intervention to address the following concerns:
>
> 1. Muscle weakness in his hips, pelvis, and trunk
> 2. Hypermobility of his hips and plantarflexors
> 3. Gait abnormalities with left intoeing and preference to weight shift to the right side in standing

(Tr. 317).

On March 28, 2013, a Speech and Language Diagnostic Evaluation was performed by Ashley Dover, MS, CCC-SLP, who concluded that A.R.L.S. did not need speech-language therapy services at that time. (Tr. 326, 329).

By April 23, 2013, A.R.L.S. demonstrated improved balance with transitioning and marked difficulty with ½ knee activities and ring sitting, at Children's Therapy T.E.A.M. (Tr. 584). On May 7, 2013, the member from Children's Therapy T.E.A.M. reported monitoring A.R.L.S.'s left foot secondary to inversion with gait, and was considering orthotic for better alignment, and noted that A.R.L.S. had a tendency to drag his left toe occasionally on that date. (Tr. 583). On June 11, 2013, A.R.L.S. was seen by Children's Therapy T.E.A.M., and was fitted for braces. (Tr. 582).

### A. Whether Plaintiff's Impairments Were Functionally Equivalent to a Listing:

Plaintiff argues that the ALJ erred in not finding that A.R.L.S. had a marked impairment in acquiring and using information, interacting and relating with others, and moving about and manipulating objects. Plaintiff also argues that the ALJ's determination on these issues was made in spite of the fact that when a Battelle Developmental Inventory-2 (BDI-2), a standardized test designed to assess developmental skills in areas of social-emotional, self-help, fine motor, gross motor, communication and cognitive skills in children from birth to age eight, was conducted on A.R.L.S., he scored 2.33 standard deviations below the mean in cognitive ability. Plaintiff further contends that the opinion of the state agency physician, Dr. Woods, was rendered without the benefit of the BDI-2 scores.

### 1. Acquiring and Using Information:

8

In his decision, the ALJ found that A.R.L.S. had no limitation in acquiring and using information. This domain concerns how well a child acquires or learn information, and how well he uses the information he has learned. 20 C.F.R. §416.926a(g).

At the hearing held on June 6, 2013, when A.R.L.S. was 19 months old, Plaintiff testified that A.R.L.S. was more independent with himself and would rather play with himself and his toys than play with his siblings or friends. (Tr. 43) She also stated that he was starting to learn how to feed himself. (Tr. 44). She testified that A.R.L.S. said few words and that there was some sign language that was being taught by his therapist. (Tr. 44).

In his decision, the ALJ properly referred to 20 C.F.R. §416.926a(g)(2)(ii) and SSR 09-3p, when discussing the domain of acquiring and using information. (Tr. 22). He further stated:

> Although an evaluation indicated that the claimant was cognitively functioning below age-appropriate levels, the claimant's mother, Ms. Wilson, testified that the claimant had learned some basic vocabulary and sign language (Exhibit 10F/6). Additionally, the claimant's teacher at Ivory Conley Headstart indicated that she has observed no problems in this domain and that the claimant's functioning appeared to be age appropriate (Exhibit 4E/2). Furthermore, after reviewing the evidence of record, the state agency physician, Dr. Woods, indicated that the claimant had no limitation in this domain (Exhibit 7F/3). Therefore, the undersigned finds that the claimant has no limitation in this domain.

(Tr. 22).

The ALJ clearly considered Ms. Campbell's evaluation, and other than the report of this "other source,"[1] Plaintiff presented no "acceptable medical source" to establish that he had cognitive limitations. In addition, A.R.L.S.'s teacher at the Ivory Conley Headstart Program, as well as Dr. Woods, reported that A.R.L.S. had no problem in acquiring and

---

[1] Ms. Campbell is a certified teacher, and Plaintiff has not shown that she is an "acceptable medical source" under the regulations, which do not permit her to establish the existence of a medically determinable impairment or give a medical opinion. 20 C.F.R. §416.913(a).

9

using information. (Tr. 136, 490-491). The Court also notes that on November 16, 2012, at a wellness visit, A.R.L.S.'s treating physician, Dr. Orrin Davis, reported that A.R.L.S. passed the 12 month developmental milestones – that he pointed to objects, stood holding on, looked for dropped/hidden objects, imitated speech, waved bye bye, walked up steps, and spoke 1-2 words. (Tr. 397).

Based upon the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's finding that A.R.L.S. had no limitations in acquiring and using information.

### 2. Attending and Completing Tasks:

In his decision, the ALJ found that A.R.L.S. had no limitations in attending and completing tasks. (Tr. 23). He noted that as recent as June 2013, A.R.L.S.'s behavior was appropriate for his age, and that his teacher at Ivory Conley Headstart and Dr. Woods indicated he had no limitations in this domain. (Tr. 23). Plaintiff does not dispute this finding, and the Court finds, after reviewing the record as a whole, that there is substantial evidence to support the ALJ's finding on this domain.

### 3. Interacting and Relating with Others:

In his decision, the ALJ found that A.R.L.S. had no limitation in interacting and relating with others. (Tr. 24). Plaintiff argues that A.R.L.S. had marked impairment in interacting and relating with others, referring again to the test results from Ms. Campbell.

The Court finds it noteworthy that after Ms. Cambpell recommended A.R.L.S. be evaluated for speech therapy, the results of such evaluation, dated March 28, 2013, were that there were no needs for therapy in auditory comprehension, receptive language, or expressive language. (Tr. 327-329). In fact, at said evaluation, it was reported that A.R.L.S. was noted to

respond to questions, spontaneously said "bye" to the examiner, and exhibited receptive and expressive language skills within normal limits for his age. (Tr. 329).

In addition, the evaluation of A.R.L.S.'s teacher and Dr. Woods support the finding that A.R.L.S. had no limitations in interacting and relating with others. Accordingly, the Court finds there is substantial evidence to support the ALJ's findings that A.R.L.S. had no limitations in this domain.

### 4. Moving About and Manipulating Objects:

In his decision, the ALJ found that A.R.L.S. had less than marked limitation in moving about and manipulating objects. (Tr. 25). Plaintiff refers to the findings of physical therapist Charity Williams in support of his position that A.R.L.S. had marked limitations in this domain. She argues that while the ALJ summarized a portion of Ms. Williams' opinion, he merely "cherry-picked" the information supplied in the report to support his determination.

The ALJ noted that although standardized testing revealed that there were some concerns with poor quality of movement and gait abnormalities, A.R.L.S.'s gross motor skills reflected close to age-appropriate levels. (Tr. 25). He referred to the fact that physical therapy records indicated A.R.L.S. was able to overhand throw a tennis ball approximately three feet without loss of balance; lifted his foot to attempt to kick a ball; took three shuffling steps backwards without loss of balance; and ascended two-to-three steps with one handrail. (Tr. 25). The ALJ also considered the opinion of Dr. Wood.

The Court also notes that on April 23, 2013, A.R.L.S. demonstrated improved balance with transitioning to Children's Therapy T.E.A.M., with marked difficulty with ½ kneel activities and ring sitting.(Tr. 584). On May 7, 2013, Children's Therapy T.E.A.M. indicated

they were monitoring A.R.L.S.'s left foot secondary to inversion with gait, and considering orthotic for better alignment, and noted that he had a tendency to drag his left toe occasionally that day. (Tr. 583).

At the hearing held on June 6, 2013, Plaintiff testified that A.R.L.S. could walk really fast, but could not run. (Tr. 42). She further stated that the surgery did help. (Tr. 43). She also testified that he was being fitted for a brace on his ankle and foot to try and get that foot to see if it might straighten out and help, and that his toes still overlapped.

As indicated earlier, a marked limitation in a domain "is a limitation that seriously interferes with a child's ability to 'independently initiate, sustain, or complete activities.'" England v. Astrue, 490 F.3d 1017, 1020 (8th Cir. 2007)(quoting 20 C.F.R. 416.926a(g)(2)(i). In making a determination regarding this domain, the ALJ looks at how the child moves his body from one place to another and moves and manipulates things. See 20 C.F.R. §416.926a(j). The Court finds that based upon the record, Plaintiff has failed to show that A.R.L.S. had a marked limitation in this domain, and that there is substantial evidence to support the ALJ's finding that A.R.L.S. had less than marked limitation in moving about and manipulating objects.

### 5. Caring for Yourself :

In his decision, the ALJ found that A.R.L.S. had no limitation in the ability to care for himself. (Tr. 26). He noted that although an evaluation revealed that A.R.L.S. was functioning below age-appropriate levels in terms of self-help, the Plaintiff testified that A.R.L.S. was able to feed himself and was beginning to use utensils. (Tr. 44). Plaintiff does not dispute this finding, and the Court finds, after reviewing the record as a whole, that there is substantial evidence to support the ALJ's finding on this domain.

### 6. Health and Physical Well-Being:

In his decision, the ALJ found that A.R.L.S. had no limitation in health and physical well-being. (Tr. 26-27). He referred to the fact that numerous physical examinations consistently revealed no abdominal or respiratory abnormalities, and noted that Dr. Woods opined that A.R.L.S. had no limitation in this domain. Plaintiff does not dispute this finding, and the Court finds, after reviewing the record as a whole, that there is substantial evidence to support the ALJ's finding on this domain.

### B.  Whether the ALJ Erred in According Significant Weight to the Teacher:

Plaintiff argues that the ALJ's assessment does not comply with the requirements of SSR 06-03p, as it fails to evaluate the opinion of Teacher Krumwiede using the applicable [regulatory] factors set forth in 20 C.F.R. §416.927(d), and erred in according significant weight to it.

20 C.F.R. §416.913(d) provides as follows:

> (d) *Other Sources.* In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairments(s) and how it affects your ability to work or, if you are a child, how you typically function compared to children your age who do not have impairments. Other sources include, but are not limited to-
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);
> (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
> . . .

In addition to the Teacher Questionnaire that was completed by Ms. Krumweide, a report dated April 24, 2012, sets forth all of the gross and fine motor skills, cognitive skills language skills, and social/emotional skills that A.R.L.S. had mastered as of that date. (Tr.

490-492). Said report reveals that A.R.L.S. had mastered the following skills: Takes weight on feet briefly with underarm support; Prone – arms and legs straightened, weight on abdomen; Suspended prone – holds head up; Rolls from back to side; Pulled to sit – no head lag; Retains dangling ring; At play, pulls covers or clothing over face; Reaches toward objects, sometimes hits them; Opens hands, plays with fingers, put hands in mouth; Shakes and plays with rattle for several minutes; Laughs aloud when lightly tickled and talked to; Turns head to sound of rattle; Anticipates food preparation; Looks at and reaches for toy; Vocalized, smiles, and reaches for familiar person; Smiles and vocalizes to mirror image; Squeals; Turns head to sound of rattle; Laughs aloud in social play; Vocalizes instead of cries when alone; Vocalizes, smiles, and reaches for familiar persons more than strangers; Laughs aloud in social play; wails if play is interrupted; Crying decreases dramatically; Looks at face and eye of person talking to him/her; Responds differentially to people (i.e. cries when mother leaves, even when other people are present). (Tr. 490-491).

> In his decision, the ALJ stated:
>
> Additionally, significant weight is given to the claimant's teacher at Ivory Conley Headstart, whose opinion indicating that the claimant appeared to function at an age-appropriate levels is reflected in the six functional equivalence domains below. Significant weight is given to the teacher, as she has had the opportunity to observe the claimant six hours a day, five days a week (Exhibit 4E/1). Furthermore, her opinion is generally consistent with the other opinion evidence contained in the record as well as the evidence indicating that although there were some concerns with poor quality of movement and gait abnormalities, the claimant's gross motor skills reflected close to age-appropriate levels (Exhibit 9F/5). Furthermore, it is consistent with the evidence indicating that the claimant consistently maintained no abdominal or respiratory abnormalities (Exhibit 1F/1, 1, 11, 6F/2, 4, 6, 11F/5, 14, 23, 28, 39, 47, 15F/8, 10, 38).

(Tr. 21). The Court has reviewed SSR 06-3p, and concludes that the ALJ properly evaluated the teacher's opinion.

Based upon the foregoing and the entire record as a whole, the undersigned believes there is substantial evidence to support the weight the ALJ gave the teacher's opinion.

**V.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits on behalf of A.R.L.S., and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 18th day of May, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE